DAWSON v. BAXTER.

(Filed September 23, 1902.)

LIBEL AND SLANDER—*Libel per se.*

> A publication that the chief of police and mayor declined to aid a committee of citizens to ascertain the perpetrator of a felony, is not libelous *per se,* there being no charge of a breach of official duty to the public.

ACTION by W. C. Dawson against W. M. Baxter and others, heard by Judge *George A. Jones,* at May Term, 1902, of the Superior Court of PASQUOTANK County.  From a judgment sustaining a demurrer to the complaint, the plaintiff appealed.

*Geo. W. Ward,* and *P. W. McMullan,* for the plaintiff.
*E. F. Aydlett,* for the defendant.

COOK, J.  The demurrer to the complaint was properly sustained by his Honor.  No special damage is alleged to

have resulted from the publication, but it is contended to be libelous *per se*. The publication of which plaintiff complains is as follows, to-wit:

"Recognizing the fact that in this matter all agencies should work together for the accomplishment of the end in view, we immediately proposed that we should communicate with Mr. Dawson, the Chief of Police, and secure the benefit of his services and ability. Mr. Dawson was waited on by several members of the committee at different times, and invited and urged to co-operate with us; he positively refused to do so, and from the date of our appointment until this hour he has not, neither has the Mayor of this city, done one single thing to assist us, but have at all times seriously handicapped our efforts by their actions and manner of treatment. For this reason we were badly thwarted in our efforts at the very outset."

And again: "We could have accomplished better results and saved much time and labor, had the Chief of Police and the Mayor recognized that they were public officers, paid as public servants, and discharged their duty in accordance with those facts."

It was made by the defendants and one H. T. Greenleaf, who "were appointed a committee of five for certain ends and purposes foreign to this complaint, and that said committee was styled and known as 'The Citizens' Committee.'"

The publication shows that plaintiff is charged with a breach of his official duty with respect to the defendants in the execution of the ends and purposes for which they were appointed, and not with respect to the public. Then what official duty did plaintiff owe to them? None is alleged in the complaint, nor does any appear upon the face of the publication. The "committee" appears to have been a volunteer organization and self-appointed. It nowhere appears that it had any legal existence, or that it owed any duty or service

to the public, or that the public through its officers owed it any duty or service; and the Court can not assume such to be the fact, *quod non apparet non est.* We must construe the language of the publication as a whole in its ordinary and popular sense with reference to what the persons to whom it was published would reasonably suppose to have been intended (Jaggard on Torts), and not what defendants intended to charge or what plaintiff understood.

Plaintiff insists that he is charged with misfeasance and nonfeasance in office. Defendants contend that the breach of duty charged has reference solely to his hinderance and refusal to assist them in their undertaking as a "committee," and not to his official duties with reference to the public.

To arrive at a proper construction of the publication, we must construe the doubtful part by comparing it with those parts which are clear and certain, and so find out its sense from the words and obvious intent of the others, as in the case where the meaning of a word is doubtful, its meaning must be ascertained from its associates, *nocitur a sociis.* So, coupling the words of the last sentence of the publication with those of the preceding, we can ascertain the sense in which they should be understood, *couplatio verborum indicat acceptationem in eodem sensu.* Thus construing them, we find the charge of misfeasance to be that he, as an officer, hindered, handicapped and badly thwarted their efforts in carrying out their undisclosed purpose; and that of nonfeasance to be that he did not recognize that he was a public officer, and did not discharge his duty in accordance with the fact, in that he would not render any official services in aid of their purposes. With this understanding of the meaning of the publication taken from its face and context, and they must have been so understood by the readers, we are unable to discern any meaning or intendment which would bring the plaintiff into disrepute, or which imputed to him an un-

fitness, either in respect or morals, inability or want of integrity for the discharge of the duties of his office; and we can not go beyond and enter into the region of conjecture, but must confine ourselves to the allegations contained in the complaint.

From this publication it nowhere appears that plaintiff was charged with having violated or failed to perform any duty imposed upon him by his office. As a public officer and public servant, he was obliged to obey and execute the prescribed and established laws of the land, and not to serve and co-operate with any body or bodies of men having neither legal existence nor legal authority to make, execute or enforce law, or to preserve the peace. As their ends and purposes were foreign to the matters of the complaint, and no legal authority is shown for their appointment, it must be assumed, even if not engaged in an unlawful purpose, that their undertaking was not within the pale and protection of the law, or that they were undertaking to usurp the functions of officers of the law, and by reason of their incompetency or inexperience, the plaintiff officer did not deign to dignify them with his official recognition. And, as the plaintiff and Mayor, of whom they also complain, did not take steps to suppress their efforts, we must assume that the purpose they had in view was not of a criminal character.

Defendants, in their publication, do not state such facts as to show that they were engaged in an undertaking which would entitle them to invoke the aid of legal authority. They do not claim that plaintiff, officer, failed to discharge any duty further than to fail to assist them in their own peculiar undertaking. To refuse them his services and ability in that behalf, he had a right to do, and "he positively refused to do so"; and he at all times seriously handicapped their efforts by his actions and manner of treatment. Should he have done otherwise? So far as the record shows, the duties

of his office did not require it. In thwarting their efforts and preventing them from accomplishing better results and saving them much time and labor, by not recognizing the fact that he was a public officer and not discharging his duty in accordance with those facts, it seems that he regarded the matter they had in view as being of such a character as would appeal to his discretion rather than a demand as of legal right. The inference is strong that they were endeavoring to manage matters which pertained to the duties of the Chief of Police and Mayor, who deemed their uninvited efforts officious and unnecessary, and kept aloof from them. If that be so, then the officers would owe them no duty; and to charge them with a failure of duty with respect of them would not injure the plaintiff's reputation or expose him in his private or official character to public scandal, hatred, ridicule or contempt.

As there is no special damage alleged to have resulted from the publication, it must appear that the words of the publication were such as to impute to the plaintiff an unfitness to perform the duties of his office, or a want of integrity in the discharge of such. And this the words do not show. There is

No Error.